JUDGE CROTTY

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------X

ANDREW J. MORTENSEN and JOHN RUDOLPH
LOBRUTTO, Individually And On Behalf of All
Others Similarly Situated,

        **Plaintiffs,**

  -against-

SONY COMPUTER ENTERTAINMENT
AMERICA LLC and SONY CORPORATION
OF AMERICA.,
INC.

        **Defendants.**

-------------------------------------------------X

11 CV 5866

**Case No.**

**CLASS ACTION
COMPLAINT**
<u>Jury Trial Demanded</u>



Plaintiffs Andrew J. Mortensen ("Mortensen") and John Rudolph LoBrutto ("LoBrutto"), for their class action complaint on behalf of themselves and all others similarly situated, upon personal knowledge as to the facts pertaining to them and upon information and belief as to all other matters, based on the investigation of their counsel, against defendants Sony Computer Entertainment America and Sony Corporation of America, Inc. ("Defendants"), states as follows:

### NATURE OF ACTION

  1.  This is a consumer class action for damages and injunctive relief arising from Defendants' deceptive and unlawful conduct in designing, manufacturing, distributing, marketing, selling, and warranting defective digital products ("Products") and in providing on-line services (the Sony Play Station Network ("PSN" or the "Service")) required, *inter alia*, to use Defendants' Products. Defendants' Service was inadequately secured against intrusion and breach of security, causing interruption of the Service and of the use of Products by end-users ("Users").

  2.  Further, Defendants kept and maintained a database of all Service Users and any financial information the Users had provided to Defendants to access the Service or buy additional

Products, which information was stolen because of Defendants' lax security policies and procedures, thereby injuring Users.

3.     Defendants have taken no steps that adequately compensate or even effectively protect Users against illegal use of the User's sensitive and extensive financial records.

4.     Defendants have made inadequate attempts to compensate or aid Users of the Service for loss of access to other services (from other suppliers but touted by Defendants as features of their Products) and the Service, as well as their subsequent failure to take adequate action to replace and repair the defective Products and Services.

**Plaintiffs**

5.     Mortensen of Chatham, New Jersey, and LoBrutto of Dorset, Vermont, are Users and purchasers of Services from Defendants.

6.     Plaintiffs use Defendants' Service to allow their PlayStation game consoles (manufactured and sold by Defendants) to use Products designed, manufactured, distributed, marketed, and sold by Defendants.

7.     These Products are all on-line multi-player games and are designed for play by 4 to 16 players.  Plaintiffs are unable to use these Products as intended and advertised by Defendants.

8.     Plaintiffs used credit cards kept on file with Defendants to buy Products and Services from Defendants and for initial signup.

9.     On July 21, 2010, Plaintiff Mortensen purchased Products and/or Services online from Defendants. For approximately one year, Plaintiff LoBrutto has been purchasing Products and/or Services online from Defendants. Plaintiffs' credit card information was stored with Defendants.

10.     Plaintiffs have been forced to seek aid to keep their credit rating from being adversely effected and from financial loss from the illegal use of their financial records held by Defendants and stolen during the aforesaid breach.   Plaintiffs believe the offer of "credit monitoring" from Defendants is a sham and totally ineffective to protect their credit.

**Defendants**

11.     Sony Computer Entertainment America LLC ("Sony Entertainment") is responsible for PlayStation Products and Services in the United States. Based in Foster City, California, Sony Entertainment serves as headquarters for all North American operations, and is a wholly-owned subsidiary of Sony Corporation of America, Inc. Defendant Sony Corporation of America, Inc. ("Sony America") is a New York corporation with its principal place of business located at 550 Madison Avenue, New York, NY 10022.  Sony America has been and is engaged in the business of designing, manufacturing, distributing, marketing, and selling Products and in providing the Services.

12.     Sony America is the U.S. subsidiary of Sony Corporation, headquartered in Tokyo, Japan.  Sony America is a leading manufacturer of audio, video communication, and information technology products for the consumer and professional markets.   Its motion picture, television, computer entertainment, music and online businesses make Sony Corporation one of the most comprehensive entertainment and technology companies in the world.  Defendant's principal U.S. businesses include Sony Electronics Inc., Sony Entertainment, Sony Pictures Entertainment Inc., and Sony Music Entertainment, Inc.  Sony recorded consolidated annual sales of approximately $78 billion for the fiscal year ended March 31, 2010, and it employs approximately 167,900 people worldwide.

## VENUE AND JURISDICTION

13.     Venue in this Court is proper because Sony America's principal executive offices are located in this Judicial District, and because a substantial part of the acts or omissions giving rise to the claims in this action occurred in this Judicial District.

14.     This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because (a) the class has more than 100 members, (b) at least one of the members of the proposed class is a citizen of a state other than New York, and (c) the total amount in controversy exceeds $5-million exclusive of interest and costs.

15.     This Court has personal jurisdiction over Defendants because a substantial portion of the wrongdoing alleged in this Complaint took place in this District; and Defendants are authorized to do business in this District, haave sufficient minimum contacts with this District, and/or otherwise intentionally avail themselves of the markets in this District through the promotion, marketing and sales of its Products and Services in this District so that the exercise of personal jurisdiction of this Court complies with judicial notions of fair play and substantial justice.

16.     This Court has personal jurisdiction over Defendant Sony America because Sony America's principal executive offices are located in this Judicial District; a substantial portion of the wrongdoing alleged in this Complaint took place in this District; and Defendant Sony America is authorized to do business in this District, has sufficient minimum contacts with this District, and/or otherwise intentionally avails itself of the markets in this District through the promotion, marketing and sales of its Products and Services in this District so that the exercise of personal jurisdiction of this Court complies with judicial notions of fair play and substantial justice.

## GENERAL ALLEGATIONS

**The Data Breach**

17.     On or about April 16 or 17, 2011, users of the PSN noticed intermittent interruptions to the Service.

18.     On or about April 20, 2011, Defendant took a drastic and to that point unheard of action: they had taken their PlayStation Network offline.

19.     Defendants gave users no warning or reason for their actions, leaving many to speculate that the Service was taken down by a "DOS attack."

20.     A "DOS attack" is a denial of service.  This is an event where a website is inundated with requests from users for access to various resources from that website.  The website computer is unable to handle the massive amount of traffic and crashes or freezes.

21.     Defendants are involved in a lawsuit with several users that many felt had precipitated reprisals from a hacker group against Defendants utilizing a DOS attack.

22.     On or about April 26, 2011, Defendants admitted a massive security breach of their computer data systems that held the sensitive financial information of its PSN clients.

23.     Defendants reported a huge breach of their computer network, which held account and financial information, including but not limited to, credit card numbers and User addresses.

24.     The information and payment accounts of 70 million of Defendants' Users were stolen by an "illegal and unauthorized intrusion into our network."

25.     Defendants advised on a webpage "[we] encourage you to remain vigilant to review your account statements and to monitor your credit reports."

26.     Defendants advised their clients to watch out for identity-theft scams after hackers breached their security and plundered the user names, passwords, addresses, birth dates, and other information used to register accounts.

27.     In reality, the breach had occurred on April 16th, ten days earlier than the admission. Defendants inexcusably delayed this admission an entire ten days after the Service was taken down following what the Company described as an 'external intrusion.'

28.     Defendants admit the stolen information includes email addresses and may include payment-card data, purchase history, billing addresses, and security answers used to change passwords.

29.     As of April 27, 2011, Defendants had not acted to  adequately inform Users of the breach causing at least one U.S. Senator outrage as to the lack of responsibility of Defendants:

> Senator Richard Blumenthal (D-CT) today reiterated his call for Sony to notify millions of customers of a data breach in the PlayStation Network sometime between April 17 – 19, noting that the company still had not responded and had not, to date, proactively alerted any of the network's 50 to 75 million users that their personal and financial information may have been compromised, leaving them open to identify theft and the misuse of sensitive personal data.
> "Sony persists in unconscionably refusing to alert its millions of users on the PlayStation Network proactively, while they remain at serious risk of identity theft and other financial attacks stemming from their personal and financial data having been compromised," said Blumenthal. "My office has been contacted by PlayStation Network users across the country who remain deeply troubled by Sony's failure to act and who are looking for answers."

http://blumenthal.senate.gov/press/release/index.cfm?id=2EBD6758-9EA0-4FC0-A5F2-C0D452F6C3E0.

30.     Below is certain content from Defendant's website published April 26, 2011 to PSN users about the data breach.  The webpage is titled "PSN/Qriocity Service Update":

The latest information on the PlayStation Network service outage

Valued PlayStation Network/Qriocity Customer:

We have discovered that between April 17 and April 19, 2011, certain PlayStation Network and Qriocity service user account information was compromised in connection with an illegal and unauthorized intrusion into our network.

In response to this intrusion, we have:

1) Temporarily turned off PlayStation Network and Qriocity services;

2) Engaged an outside, recognized security firm to conduct a full and complete investigation into what happened; and

3) Quickly taken steps to enhance security and strengthen our network infrastructure by re-building our system to provide you with greater protection of your personal information.

31.   The PSN further advised its members that they were at risk for identity fraud and possible financial injury because of the data breach:

Although we are still investigating the details of this incident, we believe that an unauthorized person has obtained the following information that you provided: name, address (city, state/province, zip or postal code), country, email address, birthdate, PlayStation Network/Qriocity passwords and login and handle/PSN online ID. It is also possible that your profile data, including purchase history and billing address (city, state, zip), and your PlayStation Network/Qriocity password security answers may have been obtained. If you have authorized a sub-account for your dependent, the same data with respect to your dependent may have been obtained. While there is no evidence that credit card data was taken at this time, we cannot rule out the possibility. If you have provided your credit card data through PlayStation Network or Qriocity, to be on the safe side we are advising that your credit card number (excluding security code) and expiration date may also have been obtained.

32.   Defendants did not aid Users with regard to credit protection. Instead, Defendants advised self-help:

To protect against possible identity theft or other financial loss, we encourage you to remain vigilant to review your account statements and to monitor your credit or similar types of reports.

## Stolen Financial Information

33.      Users have already reported unauthorized charges to credit cards.

34.      Given 10 days extra notice, Users may have afforded themselves better protection against fraud.

35.      Mark Rasch from the site http://www.securityfocus.com/print/columnists/387 put the data breach problem in perspective:

> You order a credit report, and put yourself on a credit fraud watch list. You pay for a service to inform you whenever there has been any extension of credit in your name. You call all your credit card issuers and get new credit cards. You cancel all automatic payments on your credit cards, including all your online purchases where your card is stored (such as Amazon and PayPal) and give them your new number.

36.      Users have already begun to see the adverse effects of Defendants' negligence.

37.      Gamer websites are posting User experiences such as "Considering I got a call from Capital One this morning saying my credit card that I had on PSN was being used to buy gas in Connecticut. . . ."

38.      Financial information of Users obtained from the breach has been offered for sale on pirate and hacker sites.

39.      The credit cards and other financial records illegally obtained need not even be used for Plaintiffs and the Class to be injured.

40.      The Internet site ghacks.net remarked: "With 70 million users, the data alone could be worth a fortune on the black market. Spammers would love to get their hands on email addresses, names and countries for instance to send out personalized spam to those users."

41.     70 million email boxes jammed with emails for products and schemes will delay the efficient use of third party services enjoyed by Plaintiffs and the other Class members before Defendants' negligence.

**Loss of Use of Products and Cost of Services**

42.     Plaintiffs use Defendants' Service to allow their PlayStation game consoles (manufactured and sold by Defendants) to use Products designed, manufactured, distributed, marketed, and sold by Defendants with other Users over the Internet.

43.     These Products are all on-line multi-player games and are designed and advertised by Defendants for play by 4 to 16 players.

44.     For example, the Uncharted 2: Among Thieves game is advertised by Defendants as requiring 10 users and is meant for online play.  This game is described on the game page (http://us.playstation.com/games-and-media/games/uncharted-2-among-thieves-ps3.html) as follows:

**Competitive Multiplayer**

- Competitive multiplayer gameplay includes up to 10 players in heroes-versus-villains matches.
- Deathmatch: up to 5 vs. 5 with customizable or pre-set game modes.
- Plunder:  Unique style of multiplayer that encourages teamwork to transport a treasure across terrain horizontally and vertically over obstacles.
- Player boosters gives you a variety of options to customize your characters to your play style or to provide an advantage over opponents.

45.     Games can have a very large group of online players; for example Defendants' game "FIFA Soccer 10" allows for 20 online players (http://us.playstation.com/games-and-media/games/fifa-soccer-10-ps3.html).

46.     Defendants' Products are of impaired value or worthless without the Service.

47.    On Tuesday, May 3, 2011, Sony Online Entertainment on its corporate website announced the following offer:

## SONY ONLINE ENTERTAINMENT ANNOUNCES THEFT OF DATA FROM ITS SYSTEMS

### Breach Believed to Stem From Initial Criminal Hack of SOE

.... SOE will grant customers 30 days of additional time on their subscriptions, in addition to compensating them one day for each day the system is down. It is also in the process of outlining a "make good" plan for its PlayStation®3 MMOs (DC Universe Online and Free Realms). More information will be released this week.

48.    This offer is grossly inadequate to make up for all the damage Defendants have caused Plaintiffs and all other Users.

## Add-Ons and Online Store

49.    Defendants sell Products for use in conjunction with other Products and the Service. For example, Defendants sell avatar clothing, weapons, and other digital chattel property to Users.

50.    Defendants' signup web page (http://us.playstation.com/psn/signup/) offers to sell games and other add-ons to Users:

### PlayStation®Store:

* Download new and classic games, add-ons and free demos

* Own or rent thousands of movies and TV shows, including new releases

* Get exclusive content – like Qore – you can't get anywhere else

**Gaming**:

* Go multiplayer with free online gaming happening 24/7

* Get exclusive access to new games, like PixelJunk™ Shooter and our virtual gaming platform, PlayStation®Home

* Win trophies and rewards and show them off on Facebook

51.   All of Defendants' add-on Products are worthless without the Service.

52.   Defendants' PlayStation Store (http://us.playstation.com/psn/playstation-store/) sells other items as well:

**Anywhere on the PSP®**

If you ever get trapped somewhere with nothing to do, make sure you've got your PSP® system with you. You can download new games, add-ons, PS one® classics, movies, shows, TV series, and comics directly from PlayStation®Store. Make the most of your PSP® system's built-in Wi-Fi by joining online multiplayer battles or accessing exclusive games on PlayStation®Network. Even if you're not where you want to be, you can always do what you want to do.

**Inadequate Protection of User Data**

53.   To use the Service, Defendants require the opening of an account.  As noted on the Defendants' website:

**Your PlayStation®Network Account**

Don't have a free PlayStation®Network account to go with your new PlayStation®? That's like ordering a PB&J without the jelly. It's easy to sign up – we'll send you off to our sign up screen, you tell us a little about yourself (which we won't share), then you come back here to use your shiny new PlayStation®Network ID to login.

54.   The MSNBC website on May 3, 2011 included the following interview about the security of the Defendants' Service:

In an interview with Wired, well known and wrongly jailed hacker Bret McDaniel says he spotted a severe security vulnerability on the PlayStation

Network two months ago. And he and other hackers say they believe Sony's security overall is poor.

"They were probably behind on everything," McDaniel told Wired.

55.     Defendants knew or were negligent in not knowing of the many security flaws in the Service that would allow unauthorized access to User data.

56.     Defendants did not adequately encrypt User data on their network.

57.     Defendants stored sensitive PSN information, such as unique passwords and answers to secret questions, in plain text with no encryption protection.

58.     It is widely recognized that to ensure that credit card information and other sensitive information remains protected, strong data encryption must be used.

59.     Encryption of data is performed by scrambling data with Hash Algorithms and Encryption Algorithms that further randomize data when paired with unique passwords and/or keyfiles. Without these passwords and/or keyfiles, the "scrambled" data is impossible to decipher.

60.     The complexity of the 256-bit AES encryption algorithm is a good shield against intrusion and theft even in its most simple applications.  When using 256-bit AES encryption algorithms, and a password with a length of 6 characters, there will be $26^6=308,915,776$ options to choose from.  Each option is a password possibility.

61.     For the password to be found by "brute force" (trying every possible combination) requires taking the amount of time to calculate and apply the next option to the encryption multiplied by the number of options.  On a P4 1.6 GHz with 512 MB of RAM, the time requirements are as follows:

| Length | 26 characters (the small letters of the English alphabet) | 63 characters (small letters, caps, digits, space) |
|--------|-----------------------------------------------------------|----------------------------------------------------|

| 5 | 1h 50m | 6d |
|---|--------|-----|
| 6 | 1d 20h | 1yr |
| 7 | 46d | 68yrs |
| 8 | 3.3yrs | 4032yrs |
| 9 | 90yrs | 252000yrs |

62.     It is a common practice for any institution requiring client financial information to encrypt and secure that information using passwords of 7 digits or more, and using at least one password character in lowercase, capital, number, and symbol.  Defendants did not adequately secure the  financial records of the Plaintiffs and other Class members.

63.     It has been reported that Defendants stored sensitive User information and credit card numbers without encryption, leaving them as easy prey for hackers. Defendants had the ability and duty to secure User data and did not adequately protect this data.

64.     It is now believed that over 70,000,000 card numbers and related data have been stolen.

65.     Despite knowing that the breach posed a reasonable likelihood that harm would result to the effected Users, Defendants did not immediately disclose the data breach to Users on their websites.

## CLASS ACTION ALLEGATIONS

66.     Plaintiffs bring this action pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure, on behalf of themselves and a Class defined as follows:

> All purchasers of Defendants' Products requiring multi-player use, including all Users of the Service who had made any purchases on-line through the Service or otherwise where Defendants' stored User information was stolen in the Breach from April 16, 2011 until such date as Service was restored or such other event that clarifies the nature and extent of Defendants' breach.

Excluded from the Class are (i) Defendants, any entity in which Defendants have a controlling interest or which has a controlling interest in Defendants, and Defendants' legal representatives, predecessors, successors, assigns, and employees and (ii) the judge and staff to whom this case is assigned, and any member of the judge's immediate family.

67.     Plaintiffs are members of the Class that they seeks to represent.  Members of the Class can be identified using Defendants' business records reflecting online retail sales, Product registrations, User information, and other information that are kept by Defendants in the usual course of business and/or in the control of Defendants.  Class members can be notified of the class action through publication on User websites and direct e-mailings to address lists maintained in the usual course of business by Defendants.

68.     Class members are so numerous that their individual joinder is impracticable.  The precise number of the class members is unknown to Plaintiffs, but it is clear that the number greatly exceeds the number to make joinder impossible.

69.     Common questions of law and fact predominate over the questions effecting only individual Class Members.  Some of the common legal and factual questions include:

a.      Whether Defendants' Products and Service were defectively designed, marketed, distributed, and sold;

b.      Whether Defendants knew or should have known that the Products and Service were defectively designed, marketed, distributed, and sold;

c.      Whether Defendants knowingly concealed the defective nature of the Products, the Service, and the breach of the Service;

d.      Whether Defendants disclosed the data breach of financial information to Users in a sufficiently timely manner;

e.      Whether Defendants engaged in illegal business practices by failing to

monitor or sufficiently offer third party credit monitoring without charge to the class members.

 f.  Whether Defendants misrepresented the safety, security, and usefulness of the Products and the Service, including the storage of User financial information;

 g.  Whether, by the misconduct set forth herein, Defendants violated various consumer protection statutes and/or false advertising statutes and/or state deceptive business practices statutes;

 h.  Whether, by the misconduct set forth herein, Defendants breached contracts with Users;

 i.  Whether, by the misconduct set forth herein, Defendants violated the common laws of negligent misrepresentation and/or unjust enrichment;

 j.  Whether, by the misconduct set forth herein, Defendants breached its duty of good faith and fair dealing; and

 k.  The nature and extent of damages and other remedies to which the conduct of Defendants entitles the class members.

70.  Defendants engaged in a common course of conduct giving rise to the legal rights sought to be enforced by the Plaintiffs and other Class members.  Similar or identical defective designs, statutory and common law violations, deceptive business practices, and defective Products and the Service are involved.  Individual questions, if any, pale by comparison to the numerous common questions that predominate.

71.  The injuries sustained by the Plaintiffs and other Class members flow, in each instance, from a common nucleus of operative facts: Defendants' misconduct.  In each case, Defendants designed, manufactured, supplied, and/or sold defective Products and the Service.

72.     The Plaintiffs and other Class members have been damaged by Defendants' misconduct as detailed *supra* including but not limited to the financial loss from their inability to use third party services that Defendants touted as a feature of their Products and Service.

73.     Plaintiffs' claims are typical of the claims of the other proposed class members. Plaintiffs used Defendants' Products and the Service to their detriment and were damaged thereby.

74.     Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs are familiar with the basic facts that form the basis of each proposed class members' claims. Plaintiffs' interests do not conflict with the interests of the other class members that they seeks to represent. Plaintiffs have retained counsel competent and experienced in class action litigation and intend to prosecute this action vigorously. Plaintiffs' counsel has successfully prosecuted complex class actions, including consumer protection class actions. Plaintiffs and Plaintiffs' counsel will fairly and adequately protect the interests of the other class members.

75.     The class action device is superior to other available means for the fair and efficient adjudication of the claims of Plaintiffs and the other proposed class members. The relief sought per individual member of the Class is too small given the burden and expense of individual prosecution of the potentially extensive litigation necessitated by Defendants' conduct. Furthermore, it would be virtually impossible for each class member to seek redress on an individual basis. Even if the class members themselves could afford such individual litigation, the court system could not.

76.     Individual litigation of the legal and actual issues raised by the conduct of Defendants would increase the delay and expense to all parties and to the court system. The class action device presents far fewer management difficulties and provides the benefits of a single, uniform adjudication, economies of scale and comprehensive supervision by a single court. Given the similar nature of the class members' claims and the absence of material differences in the state statutes and

common laws upon which the class members' claims are based, a nationwide Class will be much more easily managed by the Court and the parties.

## FIRST CAUSE OF ACTION

### Implied Warranty of Merchantability and Fitness for Particular Purpose

77.     The Plaintiffs hereby incorporate by reference each preceding paragraph of this Complaint, as if fully set forth herein.

78.     Defendants warranted that the Products and the Service it sold were of merchantable quality.  The Defendants are well-known merchants with respect to goods of that kind.  Plaintiffs and other members of the class relied on Defendants' skill and ability to furnish suitable goods.  The Products and the Service did not conform to the promise or affirmations of fact made on the containers, online or on labels as to online features.  As the result of Defendants' conduct, Plaintiffs and other members of the class were harmed.

## SECOND CAUSE OF ACTION

### Common Law Negligence

79.     The Plaintiffs hereby incorporate by reference each preceding paragraph of this Complaint, as if fully set forth herein.

80.     The Defendants systematically failed to monitor the security of the Service, as well as unauthorized accessibility to the Service.  Defendants failed to use encryption and other common forms of data protection to secure User data.  Defendants did not use adequate hardware firewalls and other network security equipment to safeguard User financial information and other sensitive User information.  By not using widely accepted and adequate network security devices, Defendants were negligent in their duty to safeguard User data.  In addition, Defendants did not disclose the data breach of financial information to Users in a sufficiently timely manner.  As such, some class

members were fraudulently billed on credit cards whose information was stored with Defendants. Even with this knowledge, Defendants did not act timely or adequately to cure their breach. Subsequently, Defendants failed to monitor or sufficiently offer third party credit monitoring for no charge to the adversely affected class members in a timely fashion. As the result of Defendants' wrongful conduct, Plaintiffs and the other members of the class were harmed.

### THIRD CAUSE OF ACTION

### Breach Of GBL 349 And 350 And The Various Analogous State Consumer And Advertising Laws

81. The Plaintiffs hereby incorporate by reference each preceding paragraph of this Complaint, as if fully set forth herein.

82. Defendants' sale of Products and the Service to Plaintiffs and the other members of the Class as described herein constitutes the "conduct of any trade or commerce" within the meaning of NYS GBL 349. Defendants in the normal course of their business collected user information stating that such data would remain private. Defendants misrepresented the safety, security and usefulness of the Products and the Service, including the storage of User financial and identity information. The foregoing acts and conduct of the Defendants are deceptive in that they represented to this class of consumers that such information would remain secure and/or that they had the technology or policies to secure such information when Defendants did not, in fact, employ such security measures, including but not limited to the failure to encrypt such information in the event that the information would fall into the hands of third parties. By warranting that the Products and the Service were secure, Defendants violated consumer protection statutes and/or false advertising statutes and/or state deceptive business practices statutes, and by their deceptive actions, Plaintiffs and the other members of the class were harmed.

## FOURTH CAUSE OF ACTION

### Fraudulent Concealment/Nondisclosure

83.     Plaintiffs hereby incorporate by reference each preceding paragraph of this Complaint, as if fully set forth herein.

84.     Defendants actively concealed from and failed to disclose to Plaintiffs and the other members of the Class the true defective nature of the Products and the Service as described above.

85.     Defendants were under a duty to Plaintiffs and the other members of the Class to disclose these facts because:

(a) Defendants are in a superior position to know the true character and quality of their Products and the Service, and the problems experienced with the Products and the Service;

(b) Defendants made partial disclosures about the Products and the Service in their marketing, advertising and warranties, as alleged above, while not revealing the true character or quality of security of same; and

(c) Defendants actively concealed the nature of the defective Products and the Service.

86.     The facts concealed by Defendants from Plaintiffs and the other members of the Class are material facts because any reasonable person would have considered those facts to be important in deciding whether or not to purchase the Products and the Service with a credit card.  Defendants intentionally concealed and failed to disclose the true facts about the Products and the Service for the purpose of inducing Plaintiffs and the other members of the Class to purchase the Products and the Service. Had Plaintiffs and the other members of the Class known of the defect in the Products and the Service, they would not have purchased the Products and the Service by disclosing their financial

information.  As the result of Defendants' conduct, Plaintiffs and the other members of the class were harmed.

## FIFTH CAUSE OF ACTION

### Unjust Enrichment

87.    Plaintiffs hereby incorporate by reference each preceding paragraph of this Complaint, as if fully set forth herein.

88.    As a result of the deceptive and unfair sales and marketing practices outlined above, Plaintiffs and the other members of the Class purchased the Products and the Service, which had and have a diminished value, if any.

89.    The revenues flowing to Defendants from the sale of the Service inured to its benefit. Defendants have been enriched, at the expense of unwitting consumers, by profiting from the unconscionable practices described above.  Plaintiffs and the other members of the Class, all of whom purchased the Products and Service as a result of Defendants' unconscionable practices as outlined above, have been damaged as a result of Defendants' actions, and the Defendants have been unjustly enriched thereby.  Plaintiffs and the other members of the Class are entitled to damages as a result of the unjust enrichment of Defendants, including the disgorgement of all revenue received by Defendants as a result of this conduct.

## SIXTH CAUSE OF ACTION

### Breach of Implied Covenant of Good Faith and Fair Dealing

90.    Plaintiffs hereby incorporate by reference each preceding paragraph of this Complaint, as if fully set forth herein.

91.    Defendants have not given Plaintiffs and other members of the class adequate compensation, if any, for their losses as described above.  Defendants did not disclose the data

breach of financial and identity information to Users in a sufficiently timely manner. As such, some class members were fraudulently billed on credit cards whose information was stored with Defendants. With this knowledge, Defendants did not act timely or adequately to cure their breach. Defendants engaged in illegal business practices by failing to monitor or sufficiently offer third party credit monitoring for no charge to all class members in a timely fashion. Defendants have acted to deprive Plaintiffs and the other members of the class of the benefits of the contract. By these actions and those described above, Defendants breached their duty of good faith and fair dealing owed to the Plaintiffs and the other members of the class who have been harmed by Defendants' actions.

## JURY TRIAL DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a trial by jury of all the claims asserted.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and the other proposed class members request that the Court enter an order or judgment against Defendants including the following:

A.    Certification of the action under the Federal Rules of Civil Procedure and appointment of Plaintiffs as Class Representative and their counsel of record as Class Counsel;

B.    Damages in the amount of monies paid for the Products, the Service, costs of lost third party services, lost add-ons and online "Wallets", and the cost of credit monitoring services provided by a third party entity;

C.    Actual damages, statutory damages, punitive or treble damages, and such other relief as provided by the statutes cited herein;

D.    Prejudgment and post-judgment interest on such monetary relief;

E.       Equitable relief in the form of restitution and/or disgorgement of all unlawful or illegal profits received by Defendants as a result of the unfair, unlawful, and/or deceptive conduct alleged herein;

F.       Equitable relief in the form of compensation for loss of the use of Products (exampled by DC Online) to Plaintiffs and the other members of the Class.   Unless Defendant's unlawful practices are enjoined, Plaintiffs and the other members of the Class will continue to suffer irreparable injury; to the extent their remedy at law is inadequate, and they are entitled to the injunctive and other equitable relief herein requested

G.       The costs of bringing this suit, including reasonable attorneys' and experts' fees; and

H.       All other relief to which Plaintiff and the other members of the proposed Class may be entitled at law or in equity.

Dated: August ___/___, 2011                LAW OFFICES OF CURTIS V. TRINKO. LLP

                                           By: _____
                                           Curtis V. Trinko
                                           Jennifer E. Traystman
                                           16 West 46th Street
                                           7th Floor
                                           New York, New York 10036
                                           Telephone:    (212) 490-9550
                                           Facsimile:    (212) 986-0158
                                           Email: Ctrinko@trinko.com

                                           LAW OFFICE OF PAUL C. WHALEN, P.C.
                                           Paul C. Whalen, Esq. (PW-1300)
                                           768 Plandome Road
                                           Manhasset, NY  11030
                                           Telephone:    (516) 426-6870
                                           Facsimile:    (212) 658-9685
                                           Email: pcwhalen@gmail.com

                                           *Attorneys for Plaintiffs*